FILED
2011 Aug-17  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PHILLIP and ANGIE C.,                    )
                                         )
    Plaintiffs/ Counter Defendants,  )
                                         )
vs.                                      )        2:07-CV-00756-LSC
                                         )
JEFFERSON COUNTY BOARD OF                )
EDUCATION,                               )
                                         )
    Defendant/ Counter Plaintiff.    )


MEMORANDUM OF OPINION

I.    Introduction.

    The magistrate judge filed a Report and Recommendation (Doc. 52) on
April 26, 2011, recommending that Defendant's motion for summary
judgment or, in the alternative, for judgment on the record (Doc. 38) be
granted.  The parties were allowed fourteen (14) days in which to file
written objections to the magistrate judge's recommendation.  The
magistrate judge subsequently granted the parties leave to take an
additional sixteen (16) days to file their objections.  Plaintiffs filed
objections on May 27, 2011.  (Doc. 58.)  On that same date, Defendant also

filed objections to the magistrate judge's "alternative" conclusion and findings.[1]

Plaintiffs initiated this action on April 26, 2007, seeking attorneys fees and expenses from the defendant, the Jefferson County Board of Education ("the Board"), in accordance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and the Alabama Exceptional Child Education Act, Ala. Code § 16-39-1 *et seq.*  Plaintiffs, Phillip and Angie C., the parents and legal guardians of A.C., maintained that they were entitled to attorneys fees and expenses under 20 U.S.C. § 1415, as the prevailing parties in a due process hearing decision issued on March 9, 2007, by Hearing Officer Wesley Romine.

Plaintiffs requested the due process hearing in September 2006 to challenge the Board's failure to provide them with copies of A.C.'s

---

[1]The Court also has for consideration motions for leave to participate as amicus curiae and file and amicus curiae brief, which were filed by the United States of America (Docs. 54, 63), and a motion for leave to file an amicus curiae brief filed by the Alabama disabilities Advocacy Program, the Alabama Parent Education Center, the Autism Society of Alabama, the Georgia Advocacy Office Incorporated, and the National Disability Rights Network (Doc. 56).  The latter requested to file their brief under seal.  (Doc. 57.)  The parties in this case have submitted extensive briefing of the issues involved, and the Court does not find the proposed amicus briefs add anything that is distinctly useful to the Court's resolution of this matter.  Accordingly, these motions are DENIED.

educational records and refusal to reimburse them for the cost of an independent educational evaluation ("IEE").  Following a four-day hearing, the Hearing Officer ordered that the Board provide Plaintiffs with copies "of all educational records directly related to Petitioner within ten (10) days of the date of this Decision."  (Doc. 12, attach. 111 at 36.)  The Hearing Officer also ordered that the Board pay for an evaluation Plaintiffs obtained from "Mitchell's Place."

On May 3, 2007, the Board filed a counterclaim "in the nature of an appeal" from the decision of the Hearing Officer.  Defendant sought an order setting aside the Hearing Officer's decision and declaring that the Board was the prevailing party in the due process hearing.

Defendant's motion for summary judgment or, in the alternative, for judgment on the record, was left pending before the magistrate judge for nearly two years.  Ultimately, the magistrate judge determined that the Hearing Officer did not have the authority to order the Board to produce copies of A.C.'s educational records and Plaintiffs were not entitled to reimbursement for the Mitchell's Place evaluation because the federal regulation providing for IEEs at public expense is void.  The magistrate judge

also concluded that if he was wrong and the regulation was deemed valid, the plaintiffs had complied with its requirements and were entitled to reimbursement.

The parties do not dispute the magistrate judge's statement of facts or the legal "standard of review" set forth in the report and recommendation.  However, Plaintiffs object to both the magistrate judge's determinations regarding the Hearing Officer's authority to order the Board to produce copies of A.C.'s educational records and the validity of the federal regulation providing for IEEs at public expense.  The Board objects to the magistrate judge's "alternative" conclusion that if the federal regulation at issue is not void, the plaintiffs have complied with its requirements.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, the Court finds that the magistrate judge's report and recommendation are due to be ADOPTED IN PART and REJECTED IN PART.

II.    Standard of Review.

"[T]he IDEA provision for judicial review has been described as

"puzzling" and "somewhat confusing." *Walker Cnty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1297 (11th Cir. 2000) (citing *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995); *Jefferson Cnty. Bd. of Ed. v. Ala. Dep't of Ed.*, 853 F.2d 853, 856 (11th Cir. 1988)). Essentially, an "administrative decision in an IDEA case is entitled to due weight and the court must be careful not to substitute its judgment for that of the state educational authorities." *Id.* However, "the extent of the deference to be given to the administrative decision is left to the sound discretion of the district court which must consider the administrative findings but is free to accept or reject them." *Id.* at 1297-98.

III.   Analysis.[2]

The magistrate judge correctly identified the issues presented to the Hearing Officer in the September 2006 request for a due process hearing: (1) the Board's continuing refusal to provide the plaintiffs with copies of A.C.'s educational records, and (2) the Board's failure to reimburse the plaintiffs for an IEE at public expense. However, the magistrate judge erred

---

[2]Because the parties have not made any substantive objections to the magistrate judge's statement of facts, the Court adopts those facts as they are outlined in the report and recommendation. (Doc. 52 at 4-18.)

when he concluded that both of the issues outlined in Plaintiffs' due process hearing were issues to be considered by the district court.  (Doc. 52 at 19.)

The Hearing Officer found in favor of the Board to the extent Plaintiffs' demands for copies were made outside the context of the due process hearing.  Citing prior interpretations of applicable statutes and regulations by federal regulatory bodies, the Hearing Officer determined that he was bound by the precedent established in *Bevis v. Jefferson County Board of Education*, 2:06-CV-00853-RDP (2007), and the IDEA does not provide Plaintiffs with a general entitlement or "right" to copies of A.C.'s educational records. (Due Process Decision ("DPD") at 26-30.)

However, the Hearing Officer did decide that once a due process hearing request has been filed, he has the authority to order copies be produced to the plaintiffs "for use or as evidence in a due process hearing." (DPD at 30, 35.)  Pursuant to that determination, the Hearing Officer ordered the Board to provide Plaintiffs with copies of all of A.C.'s educational records within 10 days of the date of the DPD.  The Board appealed this adverse finding, as well as the finding that they are required to pay Plaintiffs for a "Mitchell's Place" evaluation.  (Doc. 5.)  These are the

two issues before this Court at summary judgment.[3]

A.     Copies of Educational Records Following a Request for a Due Process Hearing.

After Plaintiffs filed their request for a due process hearing, the Hearing Officer issued a subpoena for A.C.'s educational records.  The Board objected, and the Hearing Officer declined to rule on the objections because copies of the educational records were "one of the two issues to be considered at the hearing."  (DPD at 4.)  At the hearing, the Board also objected to producing copies of the educational records to the plaintiffs.  At the direction of the Hearing Officer, the copies were made an exhibit to the hearing.[4]  (*Id.* at 5.)

---

[3]The Hearing Officer's ruling that the IDEA does not provide Plaintiffs with a general entitlement or "right" to copies of A.C.'s educational records was not adverse to the Board and is not the subject of the Board's "appeal" to this Court. (Doc. 5.)  Plaintiffs never chose to appeal this holding.  The magistrate judge decided to address the issue and determined, as set forth in *Bevis*, that the Hearing Officer did not have the jurisdiction or authority to order the Board to provide copies of A.C.'s educational records outside the context of a due process hearing.  (Doc. 52 at 27-29.)  Since the Hearing Officer determined, himself, that he could not order the Board to provide those copies, addressing the Hearing Officer's jurisdiction or authority to make that decision is unnecessary, and the Court declines to do so.

[4]Plaintiffs reference their "entitlement" to a "written verbatim record of the hearing."  (Doc. 58 at 79.)  They have not argued that they made a request for a copy of the record and it was denied.  That issue is not before this Court.

The due process hearing ended on January 12, 2007.  On March 9, 2007, the Hearing Officer issued his decision and ordered the Board to provide Plaintiffs' counsel with copies of all of A.C.'s educational records within ten (10) days.  The Hearing Officer cited Alabama Administrative Code R. 290-8-9-.08(8)(c)6(i)(VII), which required the Board to "make the child's educational records available to the parent(s) and/or their designated representative, upon request," after a due process hearing is requested.  Acknowledging the U.S. Supreme Court's opinion that parents must be given a "realistic opportunity to access the necessary evidence" to "match" the "natural advantage" possessed by school districts, *Schaffer v. Weast*, 546 U.S. 49, 60-61 (2005), the Hearing Officer concluded:

> Upon the filing of the due process hearing complaint[,] Petitioner's attorney was entitled to copies of the youngster's educational records. . . . Copies of a child's records *for use or as evidence in a due process hearing* are fundamental to such procedural safeguards.  Those records pertain to the identification, evaluation, educational placement of a child and the provision of a free appropriate public education.  Copies of the records are essential for the parents (and their representatives) *to act as advocates* of a child's best interest.

(DPD at 30, 35 (emphasis added).)

The Board contends that the filing of a due process request does not "transform" the right to inspect and review education records into an entitlement to copies of those records.  Plaintiffs counter that they are entitled to copies of educational records after making a due process hearing request "in order to further analyze the appropriateness of A.C.'s program and to prepare for the due process hearing.  Plaintiffs also needed the records to determine which documents to offer as evidence, so as to comply with the IDEA's five (5) day requirement."  (Doc. 58 at 74.)

The magistrate judge concluded that the Hearing Officer did not have subject matter jurisdiction to determine that copies of educational records must be produced after a due process hearing request is made—because Alabama Regulations provide that the "party requesting the impartial due process hearing may not raise issues at the due process hearing that were not raised in the written request for hearing, unless the other party agrees otherwise."   (Doc. 52 at 21 (quoting Ala. Admin. Code r. 290-8-9-.08(9)(c)6.)  Yet, the Administrative Code provision invoked by the Hearing Officer allows a party to request educational records *after* making a due process hearing request.  The magistrate judge does not suggest how the

records request can be included in the hearing request if it cannot be made until *after* the hearing request.

There is no dispute that hearing officers are afforded a number of responsibilities under the Alabama Administrative Code.   These responsibilities include ensuring that the parties have disclosed evidence five days before a due process hearing and making rulings "as necessary to conduct the hearings."   Ala. Admin. Code r. 290-8-9-.08(c)11.(l).   The essence of Plaintiffs' argument is that after the due process hearing request is made, the entitlement to copies of educational records is a discovery issue— and the hearing officer has broad authority to conduct discovery in conjunction with the hearing proceedings.

The problem is: even if this Court assumes that the Hearing Officer has the authority to order the Board to produce copies of educational records after a due process hearing request is made, pursuant to his responsibility to make rulings "as necessary" to conduct hearings and ensure the proper disclosure of evidence, the Hearing Officer did not order the production of the educational records at issue until he made his final decision.   That decision was issued nearly two months *after* the conclusion of the hearing.

The Hearing Officer, himself, acknowledged that the IDEA does not provide for a right to copies of educational records outside the context of the due process hearing.  Moreover, there is nothing in the Hearing Officer's decision that indicates Plaintiffs were hindered in their claims by their inability to obtain copies of the educational records at issue prior to, or during, the hearing.  Plaintiffs prevailed on their remaining claim before the Hearing Officer, and they have not argued nor established that the copies are essential to oppose the Board's appeal.  Given the circumstances of this case, the Court concludes that the Hearing Officer did not have the authority to order production of copies of A.C.'s educational records.

B.      Reimbursement for an IEE.

On February 2, 2006, Plaintiffs were presented with the Board's Notice and Eligibility Decision Regarding Special Education Services for A.C.  (Doc. 12, attach. 52.)  The report summarized the results of various assessments performed on A.C. as part of his reevaluation for eligibility under the IDEA.  The report included a page where the parents could sign next to the statement "I AGREE with the conclusions written in this report," or "I DO NOT AGREE with the conclusions written in this report."  (*Id*. at 9.)  Angie

C. testified that she refused to sign the report because she disagreed with the assessment results.   A handwritten note at the bottom of the page states: "Parents attended; wanted to review document over weekend before signing."  (*Id.*)  Plaintiffs did not sign the document after that weekend.

On March 7, 2006, Plaintiffs obtained an "interdisciplinary" evaluation of A.C. from "Mitchell's Place," without informing the Board.   They requested reimbursement for the evaluation on June 22, 2006.  The Board refused to pay for the evaluation because Plaintiffs had not given them prior notice of their disagreement and intent to seek an evaluation.

34 C.F.R. § 300.502 (1999)[5] provides as follows:

a) General.

> (1) The parents of a child with a disability have the right under this part to obtain an independent educational evaluation of the child, subject to paragraphs (b) through (e) of this section.

> (2) Each public agency shall provide to parents, upon request for an independent educational evaluation, information about where an independent educational evaluation may be obtained, and the agency criteria

[5]It is undisputed that the 1999 regulations apply in this case.

applicable for independent educational evaluations as set forth in paragraph (e) of this section.

(3) For the purposes of this part--

(i) Independent educational evaluation means an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question; and

(ii) Public expense means that the public agency either pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent, consistent with § 300.301.

(b) Parent right to evaluation at public expense.

(1) A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency.

(2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either--

(i) Initiate a hearing under § 300.507 to show that its evaluation is appropriate; or

(ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under § 300.507 that the evaluation obtained by the parent did not meet agency criteria.

(3) If the public agency initiates a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

(4) If a parent requests an independent educational evaluation, the public agency may ask for the parent's reason why he or she objects to the public evaluation. However, the explanation by the parent may not be required and the public agency may not unreasonably delay either providing the independent educational evaluation at public expense or initiating a due process hearing to defend the public evaluation.

(c) Parent-initiated evaluations. If the parent obtains an independent educational evaluation at private expense, the results of the evaluation--

(1) Must be considered by the public agency, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child; and

(2) May be presented as evidence at a hearing under this subpart regarding that child. . . .

The Hearing Officer determined that the Board was obligated to pay for the Mitchell's Place evaluation.  The magistrate judge reversed that holding after deciding that 34 C.F.R. § 300.502 is void.  The magistrate judge concluded that the Secretary of Education ("Secretary") exceeded his authority by enacting a regulation that provided for IEEs "at public expense."  However, in case the regulation was later deemed valid, the magistrate judge alternatively held that Plaintiffs complied with the requirements set forth in the statute and regulations and Defendant's other arguments against reimbursement were "without merit."  (Doc. 52 at 72.)

        1.    Validity of 34 C.F.R. § 300.502.

Defendant argues that § 300.502 is void because it "presum[es] to regulate in areas reserved and delegated to state and local educational agencies under the IDEA, and [it] establish[es] substantive rights, liabilities, and burdens that are not authorized by the statute and that are at odds with its text and its overall operational scheme."  (Doc. 39 at 46.)

        a.    Authority.

The IDEA provides that "[i]n carrying out the provisions of this chapter, the Secretary shall issue regulations under this chapter only to the extent

that such regulations are necessary to ensure that there is compliance with the specific requirements of this chapter." 20 U.S.C. § 1406(a). "The Secretary may not implement . . . any regulation . . . that (1) violates or contradicts any provision of this chapter; or (2) procedurally or substantively lessens the protections provided to children with disabilities under this chapter, as embodied in regulations in effect in July 20, 1983 . . . ." *Id*. § 1406(b). The statute further provides:

> The procedures required by this section shall include the following:
>
> (1) An opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in a meeting with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and *to obtain an independent educational evaluation of the child*.

20 U.S.C. § 1415(b)(1) (emphasis added). It is undisputed that this is one of only two sections in the IDEA statute that mention "independent educational evaluations." The second pertains to topics that must be included in a notice of procedural rights to parents. *Id*. § 1415(d)(2)(A). Therefore, Congress never defined what kind of opportunity parents should be given to

obtain an IEE, nor how that opportunity must be offered or provided.  34 C.F.R. § 300.502 does not exceed the Secretary's delegated authority to enact regulations that are necessary to ensure compliance with the requirement that parents of a child with a disability have the "opportunity" to obtain an IEE.

### b.   *Chevron* Standard.

"Agency interpretations of statutes they have responsibility for administering are reviewed using [the] two-step analysis" outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  *Sierra Club v. Johnson*, 541 F.3d 1257, 1264 (11th Cir. 2008).  "First, we must determine, 'whether Congress has directly spoken to the precise question at issue.'"  *Id*. (quoting *Chevron*, 467 U.S. at 842).  "If Congress's intent is clear from the statutory language, we must give it effect."  *Id*.  "Second, 'if the statute is silent or ambiguous with respect to the specific issue,' we must decide whether the agency based its interpretation on a permissible construction of the statute."  *Id*. (quoting *Chevron*, 467 U.S. at 843).  "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made

by the administrator of an agency." *Id*. at 1264-65.  But, we  "must reject administrative constructions . . . that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Id*. at 1265 (quoting *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 468 U.S. 137, 143 (1984)).

The magistrate judge appears to overlook the word "silent" in the *Chevron* standard.   Referencing a "straightforward statutory command" because the IDEA says nothing about an IEE being provided at public expense (Doc. 52 at 47), he broadly concludes that if an IEE is to be paid for by the public, "Congress must affirmatively establish such a right" (*Id*. at 59).  In the course of distinguishing the holding in another district court case, the magistrate judge explains:

> The statute's silence in the instance case and the ambiguity in *Petit* do not equate.  In *Petit*, . . . [t]he issue was simply whether this kind of service fell within that definition, a question to which Congress had not spoken.   In the instant case, there is no Congressional provision for a publicly funded IEE. There is no ambiguity on that issue.   Thus, the regulation is not entitled to *Chevron* deference.

(Doc. 52 at 66.)

However, silence and ambiguity do "equate" under *Chevron*. "'[I]f the statute is *silent or ambiguous* with respect to the specific issue,' we must decide whether the agency based its interpretation on a permissible construction of the statute." *Sierra Club*, 541 F.3d at 1264 (quoting *Chevron*, 467 U.S. at 843) (emphasis added). As the magistrate judge stated, Congress says nothing about a publicly-funded IEE in the IDEA statute. In fact, Congress says nothing about who pays for an IEE, how an IEE should be offered, or what constitutes an IEE. 34 C.F.R. § 300.502 *is* entitled to *Chevron* deference.

"If Congress explicitly leaves a gap in a statute for an agency to fill, 'there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.'" *Wright v. Everson*, 542 F.3d 649, 654 (11th Cir. 2008) (quoting *Chevron*, 467 U.S. at 843-44). "A resulting regulation is reviewed only to see if it is arbitrary, capricious, or manifestly contrary to the statute." *Id*. A regulation "is arbitrary and capricious if the agency relied on factors that Congress did not intend for it to consider, 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id*.

The Board has not established that § 300.502 is arbitrary, capricious, or manifestly contrary to the IDEA.  The Board argues that the regulation is inconsistent with what it views as a statutory scheme of state and local control of the administration, implementation, and enforcement of the requirements of the IDEA.  The Board sees 20 U.S.C. § 1406 as a provision that restricts the Secretary from broad rule-making authority because the Secretary is limited to issuing regulations "only to the extent that such regulations are necessary . . . ." § 1406(a).  However, nothing in the IDEA precludes the federal regulation at issue.  Moreover, 20 U.S.C. § 1407, which outlines State rule-making authority, also urges restraint.   States are required to identify in writing their specific requirements that are "not required by this chapter and Federal regulations; and . . . minimize the number of rules, regulations, and policies to which the local educational agencies and schools located in the State are subject under this chapter." § 1407(a)(2)-(3).

        c.    Spending Clause.

The magistrate judge further concludes that § 300.502 violates the Spending Clause of the U.S. Constitution because "the plain text of the statute says nothing about public funding for an IEE." (Doc. 52 at 63-64.) "Congress enacted the IDEA pursuant to the Spending Clause." *Arlington Cent. School Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 295 (2006). "Like its statutory predecessor, the IDEA provides federal funds to assist state and local agencies in educating children with disabilities 'and conditions such funding upon a State's compliance with extensive goals and procedures.'" *Id.* (quoting *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 179 (1982)).

"[W]hen Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out 'unambiguously.'" *Id.* at 296 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). "Legislation enacted pursuant to the spending power is much in the nature of a contract," and therefore, to be bound by 'federally imposed conditions,' recipients of federal funds must accept them 'voluntarily and knowingly.'" *Id.* (quoting *Pennhurst*, 451 U.S. at 17). "States cannot knowingly accept conditions of which they are 'unaware' or which they are

'unable to ascertain.'" *Id*. (quoting *Pennhurst*, 451 U.S. at 17).

The United States Supreme Court has held that when a court considers whether the IDEA "provides clear notice," it "begin[s] with the text." *Id*. The magistrate judge essentially began and ended his analysis with the text of the IDEA, concluding it says nothing about public funding for an IEE; therefore, the states did not have clear notice that accepting IDEA funds meant they would be responsible for providing IEEs at public expense. (Doc. 52 at 63-64.)  However, nothing in the Supreme Court's holding in *Murphy* implies that a court's analysis stops with the text of the statute—especially in a situation like this one, where the statute is silent on the issue in dispute.  While the Supreme Court "begins" with the text of the statute in *Murphy*, it later examines its "decisions and reasoning" in previous cases, discusses the goals of the legislation, and considers the statute's legislative history.  *Id*. at 300-304.

A federal regulation requiring that IEEs be provided at public expense under certain conditions has been in place since 1977, *see* 34 C.F.R. § 300.503 (1977), and acknowledged by the Supreme Court in *Schaffer v. Weast*, 546 U.S. 49, 60 (2005).  Moreover, Alabama codified the public

funding requirements of § 300.502 in its own regulation at Alabama Administrative Code 290-8-9.02(4)(d).   In *Murphy*, the Supreme Court concluded that there was nothing in the IDEA— or supporting legislation or case law—that indicated parents could recover expert witness fees in IDEA actions.  548 U.S. 291.  In this case, a federal regulation requiring public funding for IEEs has been in place since 1977 and codified by the State of Alabama.  The Court is unconvinced by the Board's argument that the State accepted federal funds under the IDEA without sufficient notice that IEEs were subject to being provided at public expense.   Defendant has not established a violation of the Spending Clause.

     2.    Entitlement to Reimbursement.

Because the Court finds that 34 C.F.R. § 300.502 is valid, we turn to the magistrate judge's "alternate" conclusion that Plaintiffs are entitled to reimbursement for the Mitchell's Place evaluation and Defendant's arguments against reimbursement are "without merit."  Defendant objects to the magistrate judge's findings, arguing that: (1) the Hearing Officer did not have jurisdiction to hear the issue of Plaintiffs' entitlement to reimbursement; (2) Plaintiffs are not entitled to reimbursement for

evaluations obtained unilaterally, without prior notice, and without providing cost information; (3) Plaintiffs have not shown that they disagreed with an existing Board evaluation; (4) the Mitchell's Place evaluation did not meet agency criteria and does not qualify as an IEE; and (5) the Mitchell's Place evaluation would be the second publicly-funded evaluation obtained during the same evaluation cycle.  (Doc. 59.)  The magistrate judge is correct in finding that Defendant's arguments against reimbursement are without merit.

>        a.        Jurisdiction.

20 U.S.C. § 1415(f) provides:

> Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

Section 1415(b)(6) specifies that state and local agencies are required to provide parents with an opportunity to "present a complaint . . . with respect to *any matter relating to the* identification, *evaluation*, or

educational placement of the child, or the provision of a free appropriate public education to such child."  (emphasis added)  The Hearing Officer clearly had jurisdiction over Plaintiff's complaint seeking reimbursement for the evaluation of their child.

b.    Procedure.

The Board argues it does not have to reimburse Plaintiffs for an IEE that was obtained unilaterally, without prior notice to the Board, and without providing cost information.  Defendant maintains that the federal regulations give parents two alternatives.  Under the first alternative (§ 300.502(b)), parents must request an IEE; wait for the Board's decision whether it will pay or defend its evaluation in a due process hearing; and if the Board decides to pay or a hearing officer decides the Board has to pay, the Board will work with the parents to make sure an IEE is conducted according to agency standards and limit the costs of the IEE.  Pursuant to this first alternative, the parents must make the publicly-funded IEE available to the Board for consideration.  (Doc. 59 at 5-7.)  Under the second alternative (§ 300.502(c)), parents pay for their own IEE and they can choose whether to present it to the Board.  (*Id*. at 7-8.)  The Board contends

that it is "antithetical to virtually every analytical, interpretational, and policy consideration" to conclude that the first option for a publicly-funded IEE does not require a progressive dialogue between parents and the school board—including prior notice and discussions regarding when and where the IEE will be held.  (Doc. 59 at 12.)

While the Board makes respectable policy arguments for its interpretation of 34 C.F.R. § 300.502(b), prior notice and a progressive dialogue are not required by federal regulations.  In fact, if the Board's version of events were required, there would be no reason for the latter provision of § 300.502(b)(2)(ii), which states that the Board does not have to pay for an evaluation if the "agency demonstrates in a hearing under § 300.507 that the evaluation obtained by the parents did not meet agency criteria."  Under the Board's version of prior notice and progressive dialogue, the evaluation would always meet agency criteria because the parents have to work with the Board, which "ensure[s] the IEE is conducted in accordance with agency standards."  (Doc. 59 at 7.)

     c.    Disagreement.

The Board also argues that it does not have to pay for the Mitchell's

Place IEE because Plaintiffs have not given a "specific" disagreement with a Board-provided evaluation. (Doc. 59 at 14.)  The Board contends that "the parents failed to identify a disagreement with the Board's *evaluations* despite having been provided an opportunity to present those disagreements in writing as part of the Board's MEDC report."  (*Id*. at 16 (emphasis in original).)   The Board also attempts to convince the Court that the evaluation with which Plaintiffs allegedly "disagreed" was not complete until the day after the Mitchell's Place evaluation was obtained. (*Id*. at 18.)

34 C.F.R. § 300.502(b)(1) provides that a "parent has the right to an independent educational evaluation at public expense if the parent disagrees with the evaluation obtained by the public agency."  "[T]he public agency may ask for the parent's reason why he or she objects to the public evaluation.  However, the explanation by the parent *may not be required* and the public agency may not unreasonably delay either providing the independent educational evaluation at public expense or initiating a due process hearing to defend the public evaluation."  *Id*. § 300.502(b)(4) (emphasis added).  There is sufficient evidence in the record that Plaintiffs disagreed with the Board's evaluation, which was presented to the parents

in February 2006.   The regulations do not require Plaintiffs to give "specifics" regarding their disagreement.

There is also no merit to Defendant's arguments that the Board's evaluation was not "complete" until the parents' meeting on March 8, 2006, the day after the Mitchell's Place evaluation was conducted.  The evidence indicates that re-evaluation assessments were completed in the latter months of 2005, a decision was made on A.C.'s eligibility for special education services, and the Board's Notice and Eligibility Decision Regarding Special Education Services for A.C. was presented to his parents on February 2, 2006.  (Doc. 12, attach. 52.)  The parents' meeting on March 8, 2006, was scheduled for additional discussion regarding those evaluations.  The Board's evaluation was complete prior to the Mitchell's Place evaluation on March 7, 2006.

> d.    Agency Criteria.

Defendant further contends that Plaintiffs are not entitled to reimbursement because the Mitchell's Place evaluation does not qualify as an "IEE" and does not meet agency criteria.  As quoted above, a school board does not have to pay for an evaluation if the "agency demonstrates

in a hearing under § 300.507 that the evaluation obtained by the parents did not meet agency criteria." 34 C.F.R. § 300.502(b)(2)(ii).  During the course of the due process hearing in this case, the Board did not argue nor establish that the Mitchell's Place evaluation did not meet agency criteria for an IEE. Accordingly, this argument has been waived.

              e.    Second Evaluation.

Finally, the Board argues that if the Mitchell's Place evaluation counts as an IEE, then an evaluation conducted by Glenwood, Inc., in January 2006 constitutes an IEE and "parents are entitled to only one independent evaluation at no cost during a given evaluation cycle." (Doc. 59 at 25.) The magistrate judge rejected this argument, agreeing with the Hearing Officer that the Glenwood evaluation did not "count" because Glenwood was not selected by the parents. (Doc. 52 at 79-80.) This Court rejects the Board's contention for the additional reason that the authority cited: 34 C.F.R. § 300.502(b)(5), was not in effect during the time period at issue in this case.

Section 300.502(b)(5) provides that "[a] parent is entitled to only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees." However,

§ 300.502(b)(5) went into effect on October 13, 2006.  There is no dispute that the 1999 version of the regulations was in effect at the time the evaluations in this case were conducted, the request for reimbursement was made, and the due process hearing request was filed.  The limitations of § 300.502(b)(5) are not included in the 1999 version of the federal regulations.

IV.    Conclusion.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, the Court is of the opinion that the magistrate judge's report is due to be and hereby is ADOPTED IN PART and REJECTED IN PART.  The statement of facts and the legal "standard of review" outlined by the magistrate judge in his report are ADOPTED.   For the reasons outlined above, the magistrate judge's recommendation that summary judgment be granted in favor of the defendant with regard to its "appeal" of the Hearing Officer's order that the Board provide Plaintiffs with copies of all of A.C.'s educational records is ACCEPTED.   The magistrate judge's recommendation that summary judgment be granted to the defendant with regard to the Hearing Officer's

order for the Board to reimburse Plaintiffs for the Mitchell's Place evaluation is REJECTED.  The Court expressly finds that Defendant's motion for summary judgment is due to be DENIED on the reimbursement issue.  A separate order will be entered.

Done this 17th day of August 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297